UNITED STATES of America

v.

Frank Ricardo SCOTT et al.

UNITED STATES of America

v.

Bernis L. THURMON et al.

Crim. Nos. 1088–70, 1089–70.

United States District Court,
District of Columbia.

April 29, 1971.

Philip L. Kellogg, Asst. U. S. Atty., for United States.

John A. Shorter, Jr., Washington, D. C., for Frank Ricardo Scott.

Thomas F. Fay, Washington, D. C., for Albert Lee.

Joseph C. Lynch, Frank Masino, Washington, D. C., (co-counsel), for Reginald Clifton Jackson.

Ben Paul Noble, Washington, D. C., Thomas O. Mann, Washington, D. C. (co-counsel), for Leroy Houston.

George W. Mitchell, Washington, D. C., for Teri A. Lee.

Joan A. Burt, Washington, D. C., for Bernis Lee Thurmon.

Dovey J. Roundtree, Washington, D. C., for Geneva Jenkins.

Allan M. Palmer, Washington, D. C., for George Jenkins.

Irving M. Levine, Washington, D. C., for Alfred D. Spencer.

Richard D. Burke, Washington, D. C., for Bernard Smith.

Martin S. Drucker, Falls Church, Va., for Johnny Duval Williams.

Anton Weiss, Washington, D. C., for Costello V. Williams.

David H. Thompson, George C. Dreos, Washington, D. C., for Chloe V. Daviage.

Jack Koppleman, for Evelyn A. Abston.

## MEMORANDUM ON MOTIONS

WADDY, District Judge.

In criminal Case No. 1088–70 Frank Ricardo Scott, also known as "Reds", Albert Lee, also known as Alphonso H. Lee, Reginald Clifton Jackson, also known as "Zeke", Leroy Houston, also known as "Big Boy" and Teri A. Lee, were charged in an indictment with conspiring together "and with other persons known and unknown to the Grand Jury" to violate (1) Section 4705(a), Title 26, United States Code and (2) Section 174, Title 21, United States Code.

Defendant, Scott, was also charged in Counts 8 and 12 of the indictment with using a communication facility "* * * in committing, causing and facilitating the commission of, and attempting to commit an act and acts constituting a violation of Section 4705(a), Title 26, United States Code, and conspiring to commit that offense"—an offense made punishable by 18 U.S.C., Section 1403. In Counts 13 and 14 he is charged with violations of Title 26 U.S.C., Section 4704(a), and in Counts 16 and 17 he is charged with violations of 21 U.S.C., Section 174.

Defendant, Albert Lee, was also charged in Counts 3 and 6 of the indictment with using a communication facility "in committing, causing and facilitating the commission of, and attempting to commit an act and acts constituting a violation of Section 4705(a), Title 26, United States Code and conspiring to commit that offense". In Count 15 he is charged with a violation of Title 26 U.S.C., Section 4704(a), and in Count 18 he is charged with a violation of Title

21 U.S.C., Section 174. Defendant, Albert Lee, is a fugitive.

Defendant, Jackson, was also charged in Counts 10 and 11 of the indictment with using a communication facility "in committing, causing and facilitating the commission of, and attempting to commit an act and acts constituting a violation of Section 4705(a), Title 26, United States Code, and conspiring to commit that offense".

Defendant, Houston, was also charged in Counts 4 and 5 of the indictment with using a communication facility "in committing, causing and facilitating the commission of, and attempting to commit an act and acts constituting a violation of Section 4705(a), Title 26, United States Code, and conspiring to commit that offense." Defendant, Houston, has entered a plea of "Guilty" to Count 4 and the Government has announced its intention to dismiss the remaining charges against him at the time of sentencing.

Defendant, Teri A. Lee, was also charged in Counts 7 and 9 of the indictment with using a communication facility "in committing, causing and facilitating the commission of, and attempting to commit an act and acts constituting a violation of Section 4705(a), Title 26, United States Code, and conspiring to commit that offense". Teri A. Lee is a fugitive.

On the same day that the indictment was returned in Criminal No. 1088–70 another indictment was returned in Criminal Case No. 1089–70 in which Bernis Lee Thurman, also known as Benjamin Thornton, Geneva Jenkins, also known as Geneva Thornton, George Jenkins, Alfred D. Spencer, Bernard Smith, Johnny Duval Williams, also known as Duke, Costello V. Williams, Chloe V. Daviage, also known as Mickey, and Evelyn A. Abston were charged with conspiring together "and with other persons known and unknown to the Grand Jury" to violate (1) Section 4705(a), Title 26, United States Code, and (2) Section 174, Title 21, United States Code.

Defendant, Thurmon, was also charged in Counts 13 and 17 of the indictment with using a communication facility "in committing, causing and facilitating the commission of, and attempting to commit an act and acts constituting a violation of Section 4705(a), Title 26, United States Code, and conspiring to commit that offense.

Defendant, Geneva Jenkins, was also charged in Counts 12 and 14 of the indictment with using a communication facility "in committing, causing and facilitating the commission of, and attempting to commit an act and acts constituting a violation of Section 4705(a), Title 26, United States Code, and conspiring to commit that offense".

Defendant, George Jenkins, was also charged in Counts 3 and 4 of the indictment with using a communication facility "in committing, causing and facilitating the commission of, and attempting to commit an act or acts constituting a violation of Section 4705(a), Title 26, United States Code, and conspiring to commit that offense". In Count 20 he is charged with a violation of Title 26, United States Code, Section 4704(a), and in Count 23 he is charged with violating Title 21, United States Code, Section 174.

Defendant, Alfred D. Spencer, was also charged in Counts 6 and 16 of the indictment with using a communication facility "in committing, causing and facilitating the commission of, and attempting to commit an act or acts constituting a violation of Section 4705(a), Title 26, United States Code, and conspiracy to commit that offense".

Defendant, Bernard Smith, was also charged in Counts 11 and 15 of the indictment with using a communication facility "in committing, causing and facilitating the commission of, and attempting to commit an act and acts constituting a violation of Section 4705(a), Title 26, United States Code, and conspiring to commit that offense". He was charged in Count 21 with a violation of Title 26, United States Code, Section 4704(a) and in Count 24 with a violation of Title 21, United States Code, Section 174. This defendant has en-

tered a plea of "Guilty" to an Information charging him with conspiracy to sell narcotics in violation of Title 26, United States Code, Section 4704(a), and the Government has announced its intention to dismiss the charges contained in the indictment at the time of sentencing.

The defendant, Johnny Duval Williams, was also charged in Counts 7 and 10 with using a communication facility "in committing, causing and facilitating the commission of, and attempting to commit an act and acts constituting a violation of Section 4705(a), Title 26, United States Code, and conspiring to commit that offense". He was charged in Count 22 jointly with Costello V. Williams with violating Section 4704(a), Title 26, United States Code, and in Count 25, jointly with Costello V. Williams, with a violation of Section 174, Title 21, United States Code. Johnny Duval Williams has entered a plea of "Guilty" to the first count of the indictment charging him with conspiring to violate Section 4705(a), Title 26, United States Code, and the Government has announced its intention to dismiss the remaining charges of the indictment against him.

In addition to the two conspiracy counts and the charges made against her jointly with Johnny Duval Williams in Counts 22 and 25 mentioned above, the defendant, Costello V. Williams, was also charged in Counts 18 and 19 of the indictment with using a communication facility "in committing, causing and facilitating the commission of, and attempting to commit an act and acts constituting a violation of Section 4705(a), Title 26, United States Code, and conspiring to commit that offense". Costello V. Williams has entered a plea of "Guilty" to Count 22 of the indictment and the Government has announced its intention to dismiss the remaining counts of the indictment applicable to this defendant.

The defendant, Daviage, was also charged in Counts 5 and 8 of the indictment with using a communication facility "in committing, causing and facilitating the commission of, attempting to commit an act and acts constituting a violation of Section 4705(a), Title 26, United States Code, and conspiring to commit that offense".

The defendant, Abston, was also charged in Count 9 of the indictment with using a communication facility "in committing, causing and facilitating the commission of, and attempting to commit an act and acts constituting a violation of Section 4705(a), Title 26, United States Code, and conspiring to commit that offense. The defendant, Abston, has been severed from this case because of her illness and hospitalization.

Frank Ricardo Scott, Albert Lee and Leroy Houston, defendants in Criminal No. 1088–70 are named as co-conspirators in Count 1 of Criminal No. 1089–70 but not as defendants therein. Frank Ricardo Scott and Leroy Houston, are named as co-conspirators in Count 2 of Criminal No. 1089–70 but not as defendants therein.

Bernis Lee Thurmon, a defendant in Criminal No. 1089–70 is named as a co-conspirator in Count 1 of Criminal No. 1088–70 but not as a defendant therein. The same allegations are incorporated by reference in Count 2 of Criminal No. 1088–70.

Both of these indictments are the result of information obtained by the use of a wire tap on telephone number 483–2948 subscribed to by "Geneva Thornton", located at #603, 1425 N Street, Northwest, Washington, D. C., and alleged to have been commonly used by Bernis Lee Thurmon. The intercept was authorized pursuant to Section 2518, Title 18, United States Code, by U. S. District Judge John Lewis Smith on January 24, 1970.

The defendants in each case have filed or joined in similar pre-trial motions and the Government has filed a motion to consolidate the two cases for trial. All motions in both cases were heard in a joint proceeding acquiesced in by all

parties and submitted to the Court for its determination.

## 1. CONSTITUTIONALITY OF THE STATUTE

All defendants have attacked the constitutionality of the statute authorizing the interception. Their primary argument is that the statute contravenes the 4th Amendment restrictions against unreasonable searches and seizures.

The motions before the Court challenge the validity of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, particularly Section 2518, Title 18, United States Code, which establishes the procedure for the interception of wire and oral communications.

As already indicated the Fourth Amendment to the Constitution of the United States provides the constitutional framework within which to test the validity of the statute. This amendment dictates that people have a right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and that this right "shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched, and the persons or things to be seized". The amendment does not bar all searches and seizures but only those that are unreasonable. The amendment outlawed the "general warrant", and its basic purpose "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." Camara v. Municipal Court, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930. Thus the issue confronting this Court is whether 18 U.S.C. § 2518 is so broad as to result in the authorization for a general warrant permitting an unreasonable search and seizure in violation of the 4th Amendment.

The United States Supreme Court faced a similar problem in Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). There it held the New York permissive eavesdrop statute, N.Y.Code Crim.Proc. § 813–a, to be unconstitutionally broad in its sweep "resulting in a trespassory intrusion into a constitutionally protected area" and thus violative of the 4th and 14th Amendments. The Court condemned the New York statute's "blanket grant of permission to eavesdrop * * * without adequate judicial supervision or protective procedures," 388 U.S. at 60, 87 S.Ct. at 1884 and reiterated the 4th Amendment requirement that a neutral and detached authority be interposed between the police and the public. It held that this authority must independently find probable cause, and that "warrants may only issue 'but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized'." 388 U.S. at 55, 87 S.Ct. at 1881.

In striking down the constitutionality of the New York Statute the Supreme Court delineated four basic 4th Amendment requirements of particularity that must be a part of any statute authorizing wiretapping or eavesdropping. These requirements are as follows:

1. The statute must provide that probable cause be established in the application and order for the belief that a *particular offense* has been or is being committed; a particular description of the *property* (conversations or communications) to be seized, and not merely the name or identity of the person whose conversations are to be seized.

2. The statute must require particularity as to the duration of the intrusion which shall not be so long as to be "the equivalent of a series of intrusions, searches, and seizures pursuant to a single showing of probable cause". The statute must provide for prompt execution of the order and for a new showing of probable cause upon each application for an extension of the original authorization.

3. The statute must require particularity as to the termination date once the particular conversation sought is seized, rather than leaving such cut-off date to the discretion of the officer.

4. The statute must provide for either notice to the persons whose conversations are to be seized or a showing of special facts or exigent circumstances necessitating the withholding of notice. The statute must also require a return on the warrant in order to limit the discretion of the officer as to the use of the seized conversations which may be of innocent as well as guilty parties.

The requirement of a showing of probable cause before an independent judicial officer imposing the necessary safeguards was reiterated by the Supreme Court in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In that case the Supreme Court held that although the eavesdropping officers had exercised great restraint and limited their intrusion into the petitioner's privacy, the intrusion was nevertheless unlawful because it lacked the safeguards of judicial restraints independently imposed. It held that the agents should have been required "before commencing the search, to present their estimate of probable cause for detached scrutiny by a neutral magistrate." They should have been "compelled, during the conduct of the search itself, to observe precise limits established in advance by a specific court order", and they should have been directed to notify the authorizing magistrate after completion of the search "in detail of all that had been seized".

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 represents an attempt by Congress, among other things, to structure a limited system of wire surveillance and electronic eavesdropping within the framework of the 4th Amendment and the guidelines of *Berger, Katz,* and other Supreme Court decisions for use by law enforcement officers in fighting crime. An examination of the portions of the statute relevant to these motions reveals that they track the constitutional requirements of particularity, judicial restraints and supervision, and the other protective procedures outlined by the Supreme Court in *Berger* and *Katz.*

The Statute vests control and supervision of its use in Judges of the U.S. District Court and the U.S. Court of Appeals. (See 18 U.S.C. §§ 2510(9) (a) and 2516(1)). Section 2518(1), Title 18, U.S. Code, requires that the application for a wiretap must contain certain information and be made to such judge who may require additional testimony or documentary evidence in support of the application, 2518(2), Title 18, U.S. Code. Section 2518(3) provides for an independent determination by the judge and

"(3) Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire or oral communications within the territorial jurisdiction of the court in which the judge is sitting, if the judge determines on the basis of the facts submitted by the applicant that—

(a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;

(b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;

(c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;

(d) there is probable cause for belief that the facilities from which, or the place where, the wire or oral communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person."

It is clear that these statutory provisions require that a neutral and detached authority be interposed between the police and the public and that authority is required to make certain specific findings of probable cause before authorizing the interception.

The first part of the *Berger* outline as to particularity is met by Section 2518(1) (b), Title 18, which requires that the *application* contain a "full and complete statement of the facts relied upon by the applicant to justify his belief that a [wiretap] order should be issued." That statement must include:

"(i) details as to the particular offense that has been, is being, or is about to be committed, (ii) a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted, (iii) a particular description of the type of communications sought to be intercepted, [and] (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted; ".

Section 2518(4) similarly provides that the *order* shall specify:

"(a) the identity of the person, if known, whose communications are to be intercepted;

"(b) the nature and location of the communications facilities as to which, or the place where, authority to intercept is granted;

"(c) a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates;

"(d) the identity of the agency authorized to intercept the communications, and of the person authorizing the application; ".

It is thus apparent that the first requirement of *Berger* has been incorporated in the wire interception statute at issue.

The second part of the *Berger* outline is also sufficiently incorporated in the statute as can be seen by an analysis of the following sections:

(1) Section 2518(1) (d) requires the application to specify the period of time for which the intercept is required, as well as the facts necessary for the probable cause to believe that the intercept should not automatically terminate when the described type of communication is first intercepted;

(2) Section 2518(1) (f) requires upon an application for an extension a showing of what has resulted so far or an explanation of why there have been no results;

(3) Section 2518(4) (e) requires that the order specify the time period for which the intercept is authorized and whether it will automatically terminate when the described communication is first obtained; and

(4) Section 2518(5) requires that the authorization be no longer than necessary to achieve the objective and in no event longer than thirty (30) days. Extensions may only be granted upon a separate showing of probable cause for each extension. All orders and extension must be executed as soon as practicable.

The third part of the *Berger* outline is provided for in Sections 2518(1) (d), 4(e), (5) and (6) which require the order and application to set out (1) the time for which the intercept is authorized; (2) a maximum intercept period of thirty days; (3) a new showing of probable cause for each extension of the authorization order; and (4) a system for reporting on the results to the authorizing judge. All of the above tend to remove discretion from the officer executing the order.

The fourth and final part of the *Berger* outline is provided for in Section 2518(8) which requires the recording of all intercepted communications and the preservation of them under the directions of the authorizing judge as well as notice by that judge to the persons named in the order within a reasonable time after the termination of that order but not later than ninety (90) days thereafter.

■ On the basis of the preceding analysis, it is the opinion of this Court that the constitutional requirements of particularity, judicial restraint and supervision, and protective procedures that were expounded by the Supreme Court

in *Berger* and *Katz* were adequately provided for in 28 U.S.C. § 2518 and that said statute is, therefore, constitutional on its face. Accordingly, the motions of all defendants to suppress based upon the alleged unconstitutionality of the statute are denied.

## 2. SUFFICIENCY OF THE APPLICATION AND AFFIDAVIT

■ Defendants seek to suppress the evidence in this case on the ground that the application and affidavit submitted to Judge Smith for the initial intercept order on January 24, 1970, were insufficient on their face to establish probable cause. Such a motion tests only the sufficiency of matters presented to the issuing authority. The testimony adduced and evidence received at the hearing of the motion cannot be used to augment an otherwise defective affidavit, but if matters are disclosed which discredit or impeach assertions in the affidavit they must be considered in determining whether probable cause in fact existed. Thus the wiretap order in this case must stand or fall on the contents of the application and affidavit in support thereof. United States v. Roth, 391 F.2d 507 (7th Cir., 1967).

The main thrust of defendants' argument is that the application fails to provide the information required by Section 2518(1) (b) and (c) which provide as follows:

"(1) Each application for an order authorizing or approving the interception of a wire or oral communication shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information: "

\* \* \*

"(b) a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including (i) details as to the particular offense that has been, is being, or is about to be committed, (ii) a particular description of the nature and location of the facilities from which the place where the communication is to be intercepted, (iii) a particular description of the type of communication sought to be intercepted, (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted;

"(c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;".

With respect to subsection (b) (i) "details as to the particular offense that has been, is being, or is about to be committed," Paragraph 1 of Agent Cooper's affidavit alleges an investigation by the Bureau of Narcotics and Dangerous Drugs and the Metropolitan Police Department of "narcotic wholesale trafficking activities" of certain known and unknown persons in a "conspiracy". Paragraphs 5, 6, 7, 8, 9, 10 and 10a alleged particular facts of continuing narcotics offenses involving some of the alleged conspirators. The affidavit speaks of an employee of "Al", one of the alleged conspirators, as selling several hundred dollars worth of heroin per pay; of members of the Bureau of Narcotics and Dangerous Drugs and of the Metropolitan Police making undercover "buys" of narcotics at the Fantasy Restaurant, alleged to be owned by one of the conspirators. It details two surveilled purchases of "wholesale" quantities of heroin from members of the alleged conspiracy and another purchase of a large quantity of narcotics from Bernis Thurman. The affidavit described the delivery of a sufficient amount of "lactose" to Albert Lee's home to cut pure heroin into 17,000 capsules for street sale; and details the widespread use of telephones by the participants to carry on the alleged conspiracy.

■ The Court finds that the affidavit complies with the requirements of subparagraph (b) (i).

■ With respect to sub-paragraph (b) (ii), the requirement of a particular description of the nature and location of the facilities to be intercepted is clearly satisfied by the following language of Paragraph 2 of Cooper's Affidavit:

"This application is submitted for an Order authorizing the interception of wire communications at 1425 N Street, N. W., Apartment 603, Washington, D. C., telephone number 483–2948. The subscriber to number 483–2948 is listed as Geneva Thornton."

■ The requirements of sub-paragraph (b) (iii), "a particular description of the type of communications sought to be intercepted", are satisfied by the following allegations of Paragraph 2 of Cooper's Affidavit:

"The type of communications sought to be intercepted are conversations among individuals in New York, New Jersey, Philadelphia, Virginia, and Washington which will reveal the details of a scheme used to smuggle narcotics into the United States, transport such narcotics into the Washington, D. C. area and distribute them in this area."

Sub-paragraph (b) (iv) requires a statement as to "the identitiy of the person, if known, committing the offense and whose communications are to be intercepted."

Paragraph 1 of the affidavit names certain known alleged conspirators and states that others are unknown. Paragraph 3 also contains the names of certain alleged conspirators. Among the named alleged conspirators is "Bernis Lee Thurman, also known as Benjamin Thornton". Bernis Lee Thurman is described in Paragraph 3B:

"He is 5′ 11″ tall and weighs 165 pounds. He resides at 1425 N Street, N.W. Apt. 603. Thurman is known to the Metropolitan Police Department I.D. Bureau as #190647 and to the Federal Bureau of Investigation as #753 570D."

In Paragraph 8 Thurman is alleged to be "Al's" right hand man and that he had been identified by the resident manager of 1425 N Street, N. W. "as the person she knows as Benjamin Thornton, who rents Apartment 603 at that address". "Al" was identified as Albert Lee, also known as Alfonso H. Lee, who lived at 5195 Linnean Terrace, Northwest, and who was described by an informant as one of the largest dealers of narcotics in the Washington, D. C. area. Similar information concerning Thurman is given in Paragraphs 10 and 10a of the affidavit. Thurman's close association with "Al" is also shown by the affidavit. This information was clearly sufficient to identify Thurman and to associate him with telephone No. 483–2948 upon which the wiretap was sought.

The Court finds that the affidavit sufficiently complies with the statute and that the particularizations and safeguards meet the constitutional standards required by *Berger, supra,* and *Katz, supra.*

We turn now to a consideration of whether the affidavit of Cooper, containing the particularizations mentioned above, was sufficient to establish probable cause for the wiretap order.

■■ In considering the question of probable cause we must keep in mind that "the term 'probable cause' * * * means less than evidence which would justify condemnation," Locke v. United States, 7 Cranch 339, 348, 3 L.Ed. 364, and that probable cause may be found "upon evidence which is not legally competent in a criminal trial". United States v. Ventresca, 380 U.S. 102, 107, 85 S.Ct. 741, 745, 13 L.Ed.2d 684, citing Draper v. United States, 358 U.S. 307, 311, 79 S.Ct. 329, 3 L.Ed.2d 327. We also keep in mind that a neutral and detached magistrate (under this statute a Federal judge) must draw the inferences from such evidence. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436. The magistrate cannot find probable cause upon the mere conclusions of the affiant but must have details of the underlying circumstances in the affidavit Aquilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723.

Further, an affidavit for a search warrant may be based on hearsay information so long as the magistrate is informed of some of the underlying circumstances supporting the affiant's conclusions and his belief that any informant involved, whose identify need not be disclosed, was credible or his information reliable. Aquilar v. Texas, supra. United States v. Long, 439 F.2d 628 (U.S.Ct. of App., D.C., decided Jan. 25, 1971).

We therefore find a two-pronged test that must be applied to Cooper's affidavit. The first is whether there is a showing of facts upon which the informant based his information, and the second is whether there is a showing of a basis upon which the affiant concluded that the informant was either credible or his information reliable.

The main informant relied upon for the information in the Cooper affidavit is SE 54, although others are mentioned. The affidavit relates some of the underlying circumstances upon which SE 54 based its information. It details that SE 54 was itself involved in the narcotics drug traffic; that it became an employee of "Al"; that while picking up its own narcotics it had personally observed numerous other packages of narcotics upon which were written the names of different persons; that "Al" had told it that he came to the District of Columbia area from New York and went into the illicit narcotics business; that "Al" had told it that he frequently went to New York and Virginia to engage in narcotics transactions; that it had observed the close relationship between "Al" and Bernis Lee Thurman and knew Thurman as "Al's" right hand man; that it had contacted a female named "Bernice" at the Fantasy Restaurant for the purpose of setting up a narcotics transaction with "Al" ; that it has seen "Al" on more than one ocassion carrying a bag containing more than 3 kilos of white power which "Al" said was pure heroin; that it had called "Al's" telephone and arranged for the delivery of a wholesale quantity of heroin on two different occasions; that on or about January 12, 1970, it learned that Mrs. Teri A. Lee was temporarily managing "Al's" business and that it should make its order by calling 483–2948; that it called that number, spoke with Bernis Lee Thurman, ordered a large quantity of narcotics from Thurman, which narcotics were delivered to SE 54.

The above-mentioned circumstances, all of which plus others, are set out in the Cooper affidavit are clearly sufficient to satisfy the first prong of the test.

The second prong of the test is equally met by the affidavit. It states that SE 54's reliability had been proven in the past; i. e. on two occasions its information directly resulted in arrests of subjects for violations of the Harrison Narcotics Act; its information had been checked and verified by members of the Metropolitan Police Department; a female by the name of "Bernice Davis" is the licensed manager of Fantasy; the two telephone calls SE 54 made to "Al" in which it ordered wholesale quantities of heroin were monitored by the police; the delivery of these orders were surveilled by police officers, one of which was made by a man whose identify was verified by the police as Bernis Lee Thurman, and the others by "Al" and Thurman. A review of the affidavit as a whole, together with the details mentioned above constitute an ample showing of a basis upon which the affiant concluded that the informant was credible and its information reliable.

It is obvious from the above that both requirements of the *Aquilar* test have been met. Defendants' arguments that probable cause was not shown because the affidavit alleges only one incident of the use of telephone No. 483–2948 in connection with a narcotics transaction and that that transaction was too remote because of the time lapse between the date of the transaction and the date of the affidavit ignore the remaining allegations of the affidavit and are unreasonably restrictive. Mr. Justice Rutlege, writing for the Court in Brinegar v.

**244**

United States, 338 U.S. 160 at 175, 69 S.Ct. 1302 at 1310, 93 L.Ed. 1879 states:

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved."

In United States v. Ventresca, 380 U. S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684, Mr. Justice Goldberg wrote:

"These decisions reflect the recognition that the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion.

\* \* \*"

"This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the 'underlying circumstances' upon which that belief is based. See Aquilar v. Texas, *supra.* Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, *where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause,* the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in

this area should be largely determined by the preference to be accorded to warrants. Jones v. United States [362 U.S. 257], supra, at 270 [80 S. Ct. 725, 4 L.Ed.2d 697]." (emphasis added).

■ The motions to suppress based upon the alleged insufficiency of the affidavits to support Judge Smith's determination of probable cause for the wiretap order are denied.

### 3. COMPLIANCE OF THE ORDER WITH THE STATUTE

This Court, having determined that 18 U.S.C., Section 2518 is constitutional and having also determined that Judge Smith had probable cause to issue the Intercept Order of January 24, 1970, must now decide whether that order complied with the requirements of the statute.

The determinations required by Section 2518(3) of Title 18 United States Code are set forth in the order of January 24, 1970, and, as heretofore pointed out, are amply supported by the factual circumstances showing probable cause.

The defendants claim, however, that the Intercept Order failed to comply with the requirements of the statute, particularly sub-sections 4(c), 4(e) and (5), and move that all evidence obtained as a result of the wiretap and all of the "fruits" of that interception be suppressed. Inasmuch as the requirements of sub-sections 4(a), (b) and (d) have not been challenged by the defendants the discussion will not deal with those sub-sections.

■ I. The statute in sub-section 4(c) requires the Court in its intercept order to specify "a particular description of the type of communications sought to be intercepted, and a statement of the particular offense to which it relates". It is the Government's contention that the order, if read as a whole, clearly so specifies. This Court agrees.

Paragraph (a) of the Order states: "There is probable cause to believe that Alphonso H. Lee, * * * Bernis Lee Thurman, and others * * * are committing and are about to commit offenses set forth in section 2516 of Title 18, to wit: *the importation and transportation of narcotics in violation of section 174 of Title 21 of the United States Code.*" (emphasis added).

This statement of a "particular offense" satisfies one of the requirements of sub-section 4(c).

Paragraph (b) of the Order continues with an additional finding that "[t]here is probable cause to believe that communications concerning that offense will be obtained through the interception of wire communications," and that "[i]n particular, those wire communications will concern the date and the manner in which narcotic drugs will be smuggled into the United States and the participants and the nature of the conspiracy involved therein and the illicit destination of these narcotic drugs in this jurisdiction." This finding satisfies the specific requirement of 4(c) that the order specify "the type of communication sought to be intercepted * * *."

The Order proceeds in paragraph (c) to state that "all normal investigative procedures have been used but none appears reasonably likely to succeed in obtaining *the above information.*" (emphasis added). The "information" referred to in paragraph (c) relates to the type of communications detailed in paragraph (b) and thus again cautions the surveilling agent as to the type of communications to be intercepted.

Finally, paragraph (d) of the Order finds "probable cause to believe that the telephone facilities at 1425 N Street, Northwest, Washington, D. C., carrying the telephone number 483–2948 is being used or is about to be used in connection with the commission of the *above described offenses* * * *." (emphasis added). This statement is again a clear reference to the offenses described in paragraph (a) of the order.

It is thus apparent that the order under consideration, if read in its entirety, as it must be, does comply with the statutory provisions of 18 U.S.C. 2518(4) (c) by particularly describing the "type of communications sought to be intercepted" and by stating "the particular offense to which it relates".

■ II. Section 4(e) of the statute requires the order to state "whether or not the interception shall automatically terminate when the described communication has been first obtained." This requirement is complied with in the "ordering" portion of the order which provides in pertinent part that the interception "must terminate upon attainment of the *authorized objectives,* or, in any event at the end of thirty (30) days from date." (emphasis supplied). The "authorized objectives" referred to relate to the seizure of telephone communications concerning the importation and transportation of narcotics and the conspiracy referred to in paragraphs (a) and (b) of the order.

■ III. The intercept order clearly complies with 18 U.S.C. § 2518(5), which requires a specification of the time during which the interception is authorized, by providing in the "Ordering" clause that:

"This authorization to intercept wire communications shall be executed as soon as practicable after signing of the Order and shall be conducted in such a way as to minimize the interception of communications that are [not] [1] otherwise subject to intercep-

---

1. There are two typographical errors in the Order which merit mentioning:

The word "[not]" was erroneously omitted from the Order. However, it was understood by the applicant and the agents that the interception was to be conducted so as to minimize the receipt of communications *not* otherwise subject to interception. If the surveilling agents disregarded the known intent of the Order the seizure would be illegal and the evidence seized subject to suppression. This issue is discussed in another section of this opinion.

tion under Chapter 119 of Title 18 of United States Code, and must terminate upon attainment of the authorized objectives, or, in any event at the end of thirty (30) days[2] from date."

Contrary to the contention of the defendants the statute does not require the Order to state *how* the agents are to minimize receipt of communications "not otherwise subject to interception"; nor does the 4th Amendment prescribe such a requirement. It is sufficient for the Order to state the requirement and direct the officer to carry out the mandate of that Order. Whether the surveilling agents in this case actually did conduct the intercept "in such a way as to minimize the interception of communications that are [not] otherwise subject to interception" is a separate question which will be discussed in another section of this memorandum.

IV. A basic requirement of 18 U.S.C. § 2518 is that a neutral and detached authority be interposed between the police and the public so as to comply with the 4th Amendment. The Order of January 24, 1970, in its final paragraph, allows for continued judicial supervision and control by that "neutral and detached authority" during the execution of the order by providing that:

> "Harold J. Sullivan shall provide the Court [Judge Smith] with a report detailing the progress of the interception and the nature of the communication intercepted on the 5th, 10th, 15th, 20th, and 25th day following the date of this Order."

It is concluded from the preceding analysis that all requirements of the statute, including 18 U.S.C. 2518(4) and (5) have been adequately incorporated

in the Order of January 24, 1970 and it is thus the opinion of this Court that said order "tracks the statute" and is therefore valid.

## 4. COMPLIANCE WITH ORDER BY MONITORING OFFICERS

Having determined that the Order of January 24, 1970, complies with 18 U.S. C. § 2518 the Court must now consider and determine whether the surveilling agents complied with the requirements of that order.

The United States Supreme Court in Berger v. New York, 388 U.S. 41, 87 S. Ct. 1873, 18 L.Ed.2d 1040 (1967), was deeply concerned with the indiscriminate seizure of communications permitted by the New York permissive eavesdrop statute, New York Code Crim.Proc. § 813–a, and stated in this regard that:

> "The statute's failure to describe with particularity the conversations sought gives the officer a roving commission to 'seize' any and all conversations."

> \* \* \* \* \* \*

> "During such a long and continuous (24 hour a day) period the conversations of any and all persons coming into the area covered by the device will be seized *indiscriminately* and without regard to their connection with the crime under investigation." 388 U.S. at 59, 87 S.Ct. at 1883 (emphasis added).

To cure this deficiency in the N. Y. statute, 28 U.S.C. 2518 provided for numerous requirements that were prescribed by *Katz* and *Berger*. In light of these requirements it was the opinion of this Court that 28 U.S.C. 2518 "tracked" *Katz* and *Berger* and was thus consitutional. (See Part 1 of Opinion, supra).

---

2. The order erroneously authorized a 30-day intercept while the application only requested a 20-day intercept. This was conceded to be a clerical error and an extension was applied for at the end of 19 days so no prejudice ensued because of the error.

It should also be noted that § 2518(3) gives the authorizing judge authority to modify a requested order. Thus Judge Smith could have extended the time period requested so long as it was still within the 30 day maximum period prescribed by the statute and did in fact extend the authorization for 11 days upon the expiration of 19 days.

As the Government has contended "Title III of the Omnibus Crime Control and Safe Street Act of 1968 was an attempt among other things to structure a *limited system of wire surveillance* and electronic eavesdropping for law enforcement use * * *." (Gov't's memorandum at p. 3). (emphasis added). One of the limiting provisions of the statute is found in 18 U.S.C. 2518(5) which provides in pertinent part that:

"Every order * * * shall contain a provision that the authorization to intercept * * * shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception * * *."

This mandate was clearly set forth in the "Wherefore" clause of the January 24, 1970 order. (See Part 3 of opinion, *supra*). As provided by statute (28 U.S.C. 2518(4) (c) the Order also attempted to describe with particularity the type of communications sought to be intercepted. (See Part 3 of opinion, *supra*). It was the opinion of this Court that these limiting provisions satisfied the requirements of §§ 4(c) and (5) of the statute and thus made the order valid.

It is unquestionable that the intent of the order was clearly expressed. Agent Cooper, the supervising agent, testified that he "understood the order to restrict [the intercept] to conversations relating to narcotics" and that he "relayed the instructions to the agents who would be manning the taps." (Transcript at pp. 305–06). Yet in spite of the order's unequivocal mandate the record reflects that virtually *all* conversations were overheard and recorded (transcript at p. 355) and that approximately 60% of the calls intercepted were completely unrelated to narcotics. Neither of these facts standing alone is conclusive but together they strongly indicate the indiscriminate use of wire surveillance that was proscribed by *Katz* and *Berger*.

The Government contends that all conversations had to be monitored in order to determine whether or not they were narcotic related. However, the record clearly depicts certain communications that could not possibly involve drugs. For example, the intercept transcript at page 47 shows a call from Riggs National Bank to Thurman seeking to verify a signature on a check; at pages 148–150 shows a conversation between Geneva and another female about a possible job opening and Geneva's qualifications for it; and at page 280 a call to the Weather Bureau and the response. It is common knowledge that when one calls for a weather report he will get a tape recorded response. These are clear cases where the intercept should have been cut off. However, the intercept was not cut off. The surveilling agents did not even attempt "lip service compliance" with the provision of the order and statutory mandate but rather completely disregarded it. The record is devoid of any attempt, no matter how slight, to minimize the interception of unauthorized calls. In fact when Agent Cooper was asked if he could point to "any discretion exercised by any agent at any time that resulted in * * * non-recordation * * *" He answered "I cannot, sir." (Transcript at p. 319).

The record indicates approximately six conversations between Geneva Jenkins and her mother. While each conversation was intercepted in its entirety, there was never any indication that Geneva's mother was involved in the alleged conspiracy and none of the conversations were narcotic related. Geneva herself was mentioned in the affidavit only as the subscriber to telephone number 483–2948. This Court is willing to accept the proposition that it may be reasonable to monitor an entire conversation between two known conspirators even if that conversation turns out to be innocent. 28 U.S.C. § 2518(5) provides for this by demanding only that there be an attempt to "*minimize* the interception of communications not otherwise subject to interception * * *. (emphasis added). But there comes a time when an officer should reasonably assume that

a particular conversation does not involve drugs. The conversations between Geneva and her mother serve as the most blatant examples of this. While there are other instances in which the Court feels that the tap should have been cut off, it will suffice to reiterate that virtually 100 per cent of all calls in each 24 hour day were monitored and that 60 per cent of the calls intercepted were not related to narcotics and not otherwise subject to interception. The Government itself has persuasively argued that an order should be read in its entirety and that "[i]t is presumed, at the least, that the judge intended the whole of the order and every part of it to be significant and effective." (emphasis added). (Government's memo at 15). If this Court were to allow the Government agents to indiscriminately intercept every conversation made and to ·continue monitoring such calls when it becomes clear that they are not related to the "authorized objectives" of the wiretap and in violation of the limiting provisions of the order such order would become meaningless verbiage and the protections to the right of privacy outlined in *Berger* and *Katz* would be illusory.

The Government argues that the indiscriminate listening by the monitoring agents was in effect approved by Judge Smith because reports were made to him every five days during the period of the intercept and he did not require any change in the manner in which the interception was being conducted but, as a matter of fact, extended the authorization for an additional period. This Court has examined the 5-day reports to Judge Smith and notes that those reports do not reveal that the agents were failing to "minimize the interception of communications that [were not] otherwise subject to interception" as required by his order of January 24, 1970. In the main, they simply report the total number of communications recorded in each 24-hour period and the number of such calls that were narcotic related. Some of the reports included a summary of what was said in some of the narcotic related conversations and information gained relating to the authorized objective, but none of them revealed that the agents were listening to and recording in full and indiscriminately *all* conversations passing through the subject telephone.

 The Government argues also that in the investigation of an ongoing narcotics conspiracy such as is involved in this case, it is necessary to intercept and monitor from beginning to end all communications passing through the tapped telephone because narcotics related transactions are conducted through code words that are peculiar to such transactions and conversations that may sound innocuous in the beginning may end up on a narcotic related subject employing such code words. This Court recognizes the difficulty that monitoring agents may have in manning wiretaps in cases of this kind. Nevertheless, that difficulty cannot authorize indiscriminate listening or permit such agents to totally disregard an order of the authorizing judge to conduct the interception "in such a way as to minimize the interception of communications that are not otherwise subject to interception".

 It is thus the opinion of this Court that the surveilling agents failed to comply with a central mandate of the Order of January 24, 1970—i.e. to "minimize the interception of communications not otherwise subject to interception"—and, therefore, the motions to suppress should be and are granted, and all intercepted telephone communications, tape recordings, transcriptions and evidence obtained either directly or indirectly as a result of the intercept authorized by the Order of January 24, 1970, are suppressed.

This granting of this motion to suppress does not necessarily end the prosecution of this case. Under District of Columbia Code, Section 23–104, as amended by the District of Columbia Court Reform and Criminal Procedure Act of 1970, the United States may have

an expedited appeal. The results of such appeal may provide guidance for this Court in any future proceedings in this case; for other judges who hereafter may be faced with similar problems and to enforcement officers in connection with future interceptions authorized pursuant to the statute for similar investigations.*

5. MOTIONS FOR PRODUCTION AND IDENTITY OF INFORMANT, TO SUPPRESS PHYSICAL EVIDENCE, FOR SEVERANCE OF DEFENDANTS AND COUNTS, FOR LEAVE TO FILE SUPPLEMENTAL SEARCH WARRANT INVENTORY, AND TO CONSOLIDATE

The remaining motions not disposed of at the hearing or in this memorandum are disposed of as follows:

Defendants' Motion For Production and Identity of the informant is denied. McCray v. Illinois, 386 U.S. 300, 311, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); Roviaro v. United States, 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

The granting of the motion to suppress for failure of the monitoring agents to comply with the order has the effect of disposing of the motions of the defendants to suppress the physical evidence obtained or seized as the result of the searches conducted in the execution of search warrants or incident to arrests in the prosecution of this case. All such motions are granted on the ground the warrants themselves were issued as a result of illegally obtained evidence and the evidence seized are "fruits of the poisonous tree". Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); Silverthorne v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319.

All motions for severance of counts and defendants are denied, no undue prejudice having been shown. Rules 14 and 8(b), Federal Rules of Criminal Procedure.

The motion of the United States for leave to file supplemental search warrant inventory is granted. Nordelli v. United States, 9th Cir., 24 F.2d 665; United States v. Greene, D.C., 141 F. Supp. 856.

The motion of the United States to consolidate Criminal Cases Nos. 1088–70 and 1089–70 is granted. Rule 13, Federal Rules of Criminal Procedure.

---

* If the Court of Appeals affirms the ruling of this Court, many weeks of trial may be averted.