**UNITED STATES of America,
Appellant,**

v.

**Frank R. SCOTT et al.**

**UNITED STATES of America,
Appellant,**

v.

**Bernis L. THURMON et al.**

**Nos. 71–1702, 71–1703.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 13, 1972.

Decided June 27, 1974.

Philip L. Kellogg, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty. at the time the brief was filed, John A. Terry and Donald T. Bucklin, Asst. U. S. Attys., were on the brief, for appellant.

Addison M. Bowman, Washington, D. C. (appointed by this court), for appellees, Spencer, Daviage and Abston.

John A. Shorter, Jr., Washington, D. C., with whom Colie B. Chappelle, Washington, D. C., was on the brief, for appellees Scott and Thurmon.

Before McGOWAN, MacKINNON and ROBB, Circuit Judges.

McGOWAN, Circuit Judge:

The Government appeals a District Court determination that (1) law enforcement officials conducting a judicially authorized wiretap failed to minimize, to the degree required by the statute, interceptions of non-narcotics-related conversations and (2) all evidence derived therefrom should be suppressed. United States v. Scott, 331 F.Supp. 233 (D.D.C.1970). We deferred decision pending action by this court on another case involving common issues, including that of minimization. United States v. James, 161 U.S.App.D.C. 88, 494 F.2d 1007 (1974). We conclude that the standards for measuring minimization employed by the District Court are at variance with those subsequently announced and thoroughly discussed in *James*. Accordingly, we remand for reconsideration in light of that opinion and the additional comments contained herein.

I

Pursuant to the provisions of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, officials of the Federal Bureau of Narcotics and Dangerous Drugs and the Metropolitan Police Department applied for judicial authorization to intercept wire communications of members of a narcotics conspiracy who were using a telephone listed to Geneva Jenkins.[1] The District Court granted authorization on January 24, 1970, empowering agents to intercept the "wire communications of Alphonso H. Lee, Burnis Lee Thurmon, and other persons as may make use of the facilities hereinbefore described," and commanding them to minimize interceptions of conversations not subject to interception under Title III.

On that same day the interception began. Officials subsequently sought and obtained authorization to intercept narcotics-related conversations conducted over two other telephone numbers,[2] and

---

[1]. The application and judicial authorization identified the subscriber of the telephone number as Geneva Thornton. However, the District Court opinion indicates that the name Thornton was an alias, and that the subscriber's real name was Geneva Jenkins. She was indicted under that name. United States v. Scott, 331 F.Supp. 233, 236 (D.D. C.1970). In this opinion, we will refer to her as Geneva Jenkins, and to the telephone number on which the authorization was granted as the Jenkins telephone.

[2]. The District Court's opinion in terms dealt only with the question of the agents' efforts to minimize unauthorized interceptions in the Jenkins wiretap. Its suppression order excluded all evidence derived from this initial interception, and "evidence obtained either directly or indirectly as a result of the intercept authorized by the Order of January 24, 1970." United States v. Scott, 331 F. Supp. 233, 248 (D.D.C.1970). While it appears that at least some information obtained from the Jenkins wiretap is reflected

later obtained an extension of the original authorization.[3] On February 24, 1970, all of the interceptions terminated, and search and arrest warrants were executed that led to the arrest of twenty-two persons and the seizure of considerable quantities of narcotics.

Following indictment, another district judge ordered comprehensive discovery and thereafter conducted an extensive series of hearings on multiple defense motions. The court concluded that the agents conducting the interception of conversations over the Jenkins phone had failed to comply with the minimization mandate, and ordered suppression of conversations intercepted in that wiretap and all other evidence derived therefrom. The Government, after failing in its attempt to obtain reconsideration of the court's order, exercised its statutory right of appeal. 18 U.S.C. § 2518(10)(b).

Minimization was but one of a number of issues urged upon the District Court during the extensive pretrial hearings. The defendants advanced individual contentions, as well as numerous common questions pertaining to the constitutionality of Title III and to the implementation of the statutory requirements in this case. Moreover, the court was at the time essentially writing on a clean slate. Few appellate decisions existed to offer guidance in the resolution of the many complex constitutional and statutory problems underlying Title III, and this court had not as yet spoken to those questions at all. *James* now teaches that the District Court properly rejected appellees' constitutional challenge to the provisions of Title III. United States v. James, 161 U.S.App.D.C. 88, 494 F.2d 1007, 1020 (1974). Moreover, we have examined the affidavit filed in support of the application for authorization to intercept conversations on the Jenkins phone, and we feel that the court properly rejected all challenges to its sufficiency. *See id.* at 1021. Finally, we concur in the court's rejection of appellees' contentions that the authorizing order insufficiently particularized the conversations that could be intercepted.

## II

■ The Government asserts that the court erred in permitting each "aggrieved person," in the language of the statute, to raise a minimization objection based on the interception of conversations in which he did not participate, insisting that this enables appellees to assert the privacy interests of others in violation of long established principles of Fourth Amendment law. *See generally* Brown v. United States, 411 U.S. 223, 230 (1973), *and cases cited therein.* Pointing out that all of the conversations cited by the court involve either Geneva Jenkins or appellee Bernis Thurmon and third parties, the Government maintains that only Geneva Jenkins and appellee Thurmon have standing to suppress intercepted conversations.

The Congressional definition of "aggrieved person" was designed "to reflect existing law." S.Rep.No. 90–1097, 90th Cong., 2d Sess., 91 (1968). *See also* Alderman v. United States, 394 U.S. 165, 175 n. 9, 89 S.Ct. 961, 22 L.Ed.2d

in the application and affidavit supporting the interceptions on the other telephone numbers, *see* JA at 28, 39–41, there was also a substantial amount of independent material contained in those documents. In these circumstances we are unable to say with certainty whether the District Court thought those taps to be fatally tainted by what it considered to be the invalid Jenkins tap. If on remand the District Court should persist in this view of the Jenkins tap, it will presumably be required to determine whether the other interceptions were tainted

to an unacceptable degree by information obtained from that tap. *See* Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

3. Although the application for the initial interception requested authorization for a twenty day wiretap, the court order granted permission for thirty days. However, agents sought extension of the initial authorization after twenty days, and that extension was granted. Appellees have not pointed to any particular harm resulting from the court's oversight, and we have found none.

176 (1969); United States v. King, 478 F.2d 494, 506–507 (9th Cir. 1973); United States v. Doe, 451 F.2d 466, 469 (1st Cir. 1971). Moreover, Congress understood that this would serve to limit the statutory remedy so as not to "press the scope of the suppression rule beyond the present search and seizure law." S. Rep.No. 90–1097, *supra,* at 96.

■ There appears to be no question that each of the appellees in this case is an "aggrieved person" within the meaning of the statute.[4] As such, each is protected by the stringent safeguards of Title III, including the requirement that agents minimize interceptions of conversations that they are not authorized to intercept. Each aggrieved person is entitled to question whether the statutory minimization requirement has been satisfied and, on proving that it has not, to move to suppress a communication on the ground that "the interception was not made in conformity with the order of authorization or approval." 18 U.S.C. § 2518(10)(a)(iii). The question presented by the Government's challenge is really whether some of the appellees can introduce evidence based on conversations in which they did not participate in order to attempt to demonstrate that the intercepted conversations to which they were a party were not, in the statutory phrase, seized "in conformity with the order of authorization."[5]

■ Any inquiry into possible noncompliance with the minimization requirement is, by its very nature, one that calls for an examination of the totality of the monitoring agents' conduct during the duration of the authorized interception. Fragmenting the minimization inquiry in the manner suggested by the Government would force the court to adopt an unrealistically narrow view of the issue, thus making any assessment of the overall reasonableness of the agents' conduct a highly artificial exercise. The District Court properly recognized this, and rejected the Government's argument.[6] The court also properly recognized the necessity of assessing the totality of the agents' conduct, and indeed considered the cited conversations only as examples of their actions. *See* Scott, *supra,* 331 F.Supp. p. 2, at 247. We find no error in this regard.[7]

---

4. Section 2510(11) defines an "aggrieved person" to be any person "who was a party to any intercepted wire or oral communication" or a person "against whom the interception was directed." 18 U.S.C. § 2510(11). Each appellee claims to have been a party to an intercepted conversation, and the Government does not contest this claim. Section 2518, in turn, states that aggrieved persons "may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that—
   (i) the communication was unlawfully intercepted;
   (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
   (iii) the interception was not made in conformity with the order of authorization or approval."
*Id.* § 2518(1)(a). *See* United States v. Giordano, *infra,* 469 F.2d 522 (4th Cir. 1972).

5. The Government's argument on standing is correct insofar as it relates to the question of which conversations an individual aggrieved person might suppress upon proof that the monitoring agents failed adequately to minimize. As Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), indicates, the prohibition against assertion of another's rights normally would preclude an aggrieved person from suppressing a conversation in which he did not participate. *See* United States v. Poeta, 455 F.2d 117, 122 (2d Cir. 1972).
   On this appeal the Government argued vigorously that, even assuming a breach of the statutory minimization requirement, it was error for the District Court to exclude all of the intercepted conversations, including those clearly related to narcotics. Since the question of the appropriate remedy for such breach does not arise until the breach itself is established, we do not, in view of the disposition we make of this appeal, find it necessary to address that question.

6. Although the opinion does not so indicate, the transcript of the hearings reveals that the Government unsuccessfully pressed this argument upon the District Court.

7. We do not mean to imply that in all cases the District Court should allow each aggrieved person access to the totality of the

**198**

■ Examination of the District Court's resolution of the merits discloses, however, that the court did apply an improper standard in assessing the agents' alleged noncompliance with the minimization requirement. As *James* and other cases make clear, any minimization determination requires an assessment of the reasonableness of the agents' efforts in light of the purpose of the wiretap and the information available to them at the time of interception. *See also* United States v. Bynum, 360 F. Supp. 400 (S.D.N.Y.), aff'd, 485 F.2d 490 (2d Cir. 1973), vacated on other grounds 417 U.S. 903, 94 S.Ct. 2598, 41 L.Ed.2d 209 (1974); United States v. Focarile, 340 F.Supp. 1033 (D.Md.), aff'd sub nom. United States v. Giordano, 469 F.2d 522 (4th Cir. 1972), aff'd, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974).

It appears that the trial court's conclusion that the agents made no attempt to minimize stemmed in large part from its conclusions that they failed to succeed. The court relied heavily upon the fact that some sixty percent of the intercepted conversations appeared to be unrelated to narcotics transactions. This, together with the fact that the agents intercepted all of the conversations conducted during this period of authorization, in the opinion of the District Court, "strongly indicate[d] the indiscriminate use of wire surveillance that was proscribed by *Katz* [Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576] and *Berger* [Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040]." *Scott, supra,* 417 U.S. 903, 94 S.Ct. 2598, 41 L.Ed.2d 209, p. 2, at 247. The court purported to find confirmation of this initial impression in its examination of certain conversations which, in its opinion, clearly should not have been intercepted.

■ This court's intervening opinion in *James* indicates that an assessment of the reasonableness of agents' attempts to minimize must be judged on a considerably more particularized basis. For example, a substantial number of the intercepted conversations that cannot be classified as narcotics-related appear to have been either very short in duration or extremely ambiguous in nature, or both. Interception of those conversations cannot be considered unreasonable, for the agents could not have determined whether they were innocent prior to their termination. *See* United States v. Bynum, 485 F.2d 490, 500 (2d Cir. 1973), vacated on other grounds, 417 U.S. 903, 94 S.Ct. 2598, 41 L.Ed.2d 209 (1974). And, if the Government's characterization of the number of intercepted conversations of this type proves substantially correct, it would appear that the District Court's determination that sixty percent of the intercepted calls were unrelated to narcotics substantially overstates the case for noncompliance with the order to minimize. Likewise, the cited conversations between appellee Geneva Jenkins and her mother must be examined more carefully. While all of the conversations may appear in retrospect to have been innocent, that does not necessarily indicate that each interception was unreasonable. The conduct of the agents must be assessed in light of the information available to them at the time. If the Government's assertion that agents had reasonable cause to suspect the mother's knowledge of the narcotics conspiracy proves correct, interception of those conversations would not

intercepted conversations in order to prove a minimization challenge. Title III makes the authorizing judge the custodian of the intercepted conversations. 18 U.S.C. § 2518 (8)(a), (d). Additionally, Section 2518 (10) states that the judge, upon the filing of a motion to suppress, "may in his discretion make available to the aggrieved person or his counsel for inspection such portions of the intercepted communication or evidence derived therefrom as the judge determines to be in the interests of justice." There may be cases in which the district judge determines that he can confidently rule on the minimization question without permitting complete access to all of the intercepted conversations.

be unreasonable, at least until such time as the initial suspicion should have been dissipated.

### III

While examination of the District Court's opinion persuades us that the court applied improper standards in resolving the minimization question, we cannot with equal certainty determine what the proper resolution of the issue should be. Many of the underlying facts essential to an assessment of the reasonableness of the agents' conduct have not been established. Much of the Government's argument in this court is based on an analysis prepared by it of the intercepted calls, including its resulting characterization of the information available to the agents at the time of the particular interceptions. This comprehensive analysis was not made available to the court prior to the motion for reconsideration of its suppression order, and the transcript of the hearing on that motion indicates that it was not carefully examined at that time.

The call analysis, while not technically new evidence, may suffer some of the same infirmities. It may, for example, contain errors of characterization or other factual inaccuracies that can best be identified and corrected in adversarial proceedings. Likewise, the Government's characterization of the nature of information available to the intercepting agents should be subject to appellees' scrutiny and challenge. Only after the court is satisfied that it has a complete and accurate picture of the agents' actions can it make a meaningful assessment of the reasonableness of their conduct.

The District Court, upon remand, should accept the call analysis and any other evidence that might appear to be of assistance in the resolution of this complicated minimization question. And, after assuring itself of the validity of the evidentiary offerings, it should again assess the reasonableness of the agents' conduct in light of *James* and the comments contained herein.

The suppression order is vacated without prejudice, and the case is remanded to the District Court for re-examination of the minimization issue in the light of *James* and for further proceedings consistent herewith.

It is so ordered.