UNITED STATES of America,
Appellant,

v.

Frank Ricardo SCOTT, a/k/a
"Reds", et al.

UNITED STATES of America,
Appellant,

v.

Bernis Lee Thurmon, a/k/a Benjamin
Thornton, et al.

Nos. 74–2097, 74–2098.

United States Court of Appeals,
District of Columbia Circuit.

Oct. 3, 1975.

ORDER

Appellants' suggestion for rehearing en banc having been transmitted to the full Court and there not being a majority of the Judges in regular active service in favor of having this case reheard en banc, it is

Ordered by the Court en banc that the aforesaid suggestion for rehearing en banc is denied.

Statement of Circuit Judge SPOTTSWOOD W. ROBINSON, III, with whom Chief Judge BAZELON and Circuit Judges J. SKELLY WRIGHT and LEVENTHAL concur, as to why he would grant rehearing en banc.

SPOTTSWOOD W. ROBINSON, III,
Circuit Judge:

The decision in these cases appears to be seriously inconsistent with our earlier decision in United States v. James.[1] Beyond that, the extent to which judicial interpretations of a statute sanctioning telephone wiretaps may tolerate otherwise unconstitutional invasions of privacy is a question of exceptional and recurring importance. For these reasons—traditional foundations for full-court consideration[2]—I would grant rehearing en banc in these cases.

The governing statute requires all judicially authorized wiretapping to "be conducted in such a way as to minimize the interception of communications not otherwise subject to interception . . . ."[3] James adopted a construction of this provision which was formulated originally by the Second Circuit.[4] Under the James standard, the duty to minimize is satisfied "if 'on the whole the [intercepting] agents have shown a high regard for the right of privacy and have done all they reasonably could to avoid unnecessary intrusions.'"[5] Thus James demands an inquiry as to the intercepting agent's subjective intent to minimize the interception of innocent calls, as well as an objective determination that the agent could reasonably have believed that calls actually intercepted were likely to be illicit.[6]

The instant decision acknowledges this holding in James, but concludes that although the agents' attitude "is a relevant factor to be considered, . . . the decisive factor is the second element—the objective reasonableness of the interceptions."[7] The first element is relegated to a far less significant position: "[t]he subjective intent of the monitoring agents is not a sound basis for evaluating the legality of the seizure;"[8] "[w]hen the monitoring agents fail to manifest 'a high regard for the right of privacy,' the Government will simply have a heavier burden

1. 161 U.S.App.D.C. 88, 494 F.2d 1007, cert. denied, 419 U.S. 1020, 95 S.Ct. 495, 43 L.Ed.2d 294 (1974).

2. See Fed.R.App.P. 35(a).

3. Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351, tit. III, § 802, 82 Stat. 218 (1968), 18 U.S.C. § 2518(5) (1970).

4. United States v. Tortorello, 480 F.2d 764 (2d Cir.), cert. denied, 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86 (1973).

5. United States v. James, supra note 1, 161 U.S.App.D.C. at 99, 494 F.2d at 1018, quoting United States v. Tortorello, supra note 4, 480 F.2d at 784 (emphasis in James).

6. United States v. James, supra note 1, 161 U.S.App.D.C. at 99, 494 F.2d at 1018.

7. United States v. Scott, 170 U.S.App.D.C. 158 at 163 n. 12, 516 F.2d 751, at 756 n. 12 (1975).

8. Id. at 756.

of showing that the interceptions were reasonable."[9] Indeed, the court now says that "the agents could publicly declare their intent to disobey the minimization provisions of the wiretap order, and yet it is possible that the ultimate interceptions will be found to have been reasonable."[10]

Despite the admitted fact that "[t]hroughout these proceedings the Government has conceded that its agents did not minimize the interception of any conversations,"[11] and the further fact, found by the District Court, that there was a "knowing and purposeful failure by the monitoring agents to comply with [its] minimization order,"[12] the decision herein rejects the District Court's ruling "that the failure to attempt minimization was itself proof that the interceptions were unreasonable."[13] The opinion does concede that "[t]he presence or absence of a good faith attempt to minimize on the part of the agents is undoubtedly one factor to be considered in assessing whether the minimization requirements has been satisfied."[14] But the court stresses that in the final analysis "the decision on . . . suppression . . . must ultimately be based on the reasonableness of the actual interceptions and not on whether the agents subjectively intended to minimize their interceptions."[15]

This interpretation effectively destroys the subjective criterion of *James'* two-pronged standard for minimization efforts, and fatally undermines the force of the minimization requirement itself.

Once the decisive test of the validity of an interception becomes its "objective reasonableness,"[16] there is grave danger that determinations of reasonableness will be dictated by hindsight evaluations of evidence uncovered by wiretaps. This, in turn, is bound to generate a strong temptation to wiretap first and then use the fruits of the interception in an effort to demonstrate that the intrusion was justified. Courts have repeatedly refused to validate searches and seizures in this after-the-fact manner,[17] and any decision which implies that Fourth Amendment safeguards apply less stringently to wiretaps than to other searches deserves close scrutiny by the entire court.[18]

Moreover, the practical ramifications of this decision are serious. It appears to destroy any incentive for law enforcement agents conducting wiretap surveillances to respect the rights of citizens to privacy in noncriminal telephone conversations in advance of their intrusion. It is evident that when agents endeavor in good faith to honor these rights, innocent conversations are less likely to be intercepted. But when agents completely disregard their obligations to minimize no conversation is likely to escape their ears. That in my view is a result which hardly comports with a statute explicitly requiring minimization. The court as a whole should take a hard look at these cases, and should itself define the extent to which would-be wiretappers must maintain allegiance to the statute and the Fourth Amendment.

9. *Id.* at 756 n. 12, quoting *United States v. James, supra* note 1, 161 U.S.App.D.C. at 99, 494 F.2d at 1018.

10. *United States v. Scott, supra* note 7, at 756.

11. *Id.* at 755.

12. *Id.*

13. *Id.*

14. *Id.* at 756.

15. *Id.*

16. See text *supra* at note 7.

17. See note 18, *infra.*

18. The panel acknowledges "that the validity of the search is not to be determined by what is found," citing *United States v. Di Re*, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); *Byars v. United States*, 273 U.S. 28, 29, 47 S.Ct. 248, 71 L.Ed. 520, 522 (1927), but states merely that "that principle is not relevant to the question of compliance with the minimization requirement, which necessarily turns on what is discovered in the course of the wiretap." *Id.* at 756 n. 10.