No. 75–5688.  SCOTT ET AL. *v.* UNITED STATES. C. A. D. C. Cir.  Certiorari denied.  MR. JUSTICE POWELL would grant certiorari.

MR. JUSTICE BRENNAN, with whom MR. JUSTICE MARSHALL concurs, dissenting.

The Court today again refuses to grant certiorari to consider the proper implementation of the "minimization" requirement of 18 U. S. C. § 2518 (5), one of the core provisions of Title III of the Omnibus Crime Control and Safe Streets Act of 1968.  See, *e. g., Bynum v. United States,* 423 U. S. 952 (1975) (BRENNAN, J., dissenting from denial of cert.).  The "minimization" provision, which requires that every order and extension thereof authorizing electronic surveillance shall "contain a provision that the authorization to intercept shall be . . . conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter,"

> "constitutes the congressionally designed bulwark against conduct of authorized electronic surveillance in a manner that violates the constitutional guidelines announced in *Berger v. New York,* 388 U. S. 41 (1967), and *Katz v. United States,* 389 U. S. 347 (1967).  Congress has explicitly informed us that

the 'minimization' and companion safeguards [*e. g.,* §§ 2518 (3)(a), (b), (c), and (d)] were designed to assure that 'the order will link up specific person, specific offense, and specific place. Together [the provisions of Title III] are intended to meet the test of the Constitution that electronic surveillance techniques be used only under the most precise and discriminate circumstances, which fully comply with the requirement of particularity.' S. Rep. No. 1097, 90th Cong., 2d Sess., 102 (1968)." *Bynum* v. *United States, supra,* at 952.

When the Court denied certiorari in *Bynum,* I indicated my reasons for believing that "we plainly fail in our judicial responsibility when we do not review these cases to give content to the congressional mandate of 'minimization,'" particularly since guidance for judges authorizing electronic surveillance "is absolutely essential if the congressional mandate to confine execution of authorized surveillances within constitutional and statutory bounds is to be carried out." *Id.,* at 958–959, 953. That review is no less appropriate now. Indeed, it is even more urgent in light of the proliferation of opinions—exemplified by this case from the Court of Appeals for the District of Columbia Circuit—sanctioning round-the-clock surveillance in which every conversation, whether innocuous or incriminating, is intercepted.

The facts of this case are relatively simple. The Government sought and obtained authorization to intercept wire communications over a certain specified telephone on the ground that there was probable cause to believe that certain named individuals were using that telephone in connection with the commission of narcotics offenses, and that information concerning the offenses would be obtained through the interception of the communications over the telephone. The order authorized the intercep-

tion of conversations relating to the illegal importation and transportation of narcotics and, as required by § 2518 (5), specified that the interception "shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter."

Although the monitoring agents were aware of the minimization requirement, the agent in charge testified that no attempt was made to minimize the interceptions. In fact, the agents listened to and recorded each and every one of the 384 calls completed over the subject telephone during the 30 days the surveillance was in effect, even though the agents' contemporaneous reports to the supervising judge classified the intercepted calls as only 40% narcotics-related and 60% non-narcotics-related. The agents also never informed the judge that they were taking no steps to minimize the amount of surveillance.

After the surveillance was terminated and petitioners and others were arrested, the District Judge conducted pretrial hearings on the question whether all evidence obtained during the surveillance, and the fruits thereof, had to be suppressed on the ground of noncompliance with the minimization mandate of the statute and the explicit provision of the wiretap authorization. The judge, finding that the agents "did not even attempt 'lip service compliance' with the provision of the order and statutory mandate but rather completely disregarded it," 331 F. Supp. 233, 247 (DC 1971), ordered the complete suppression of all evidence obtained directly or indirectly through the surveillance. *Id.,* at 248. On appeal, the Court of Appeals remanded for further consideration in light of another case in which it had adopted a test by which the statutory command of minimization was considered to be satisfied if monitoring agents made good-

faith efforts to minimize and if those efforts were reasonable. 164 U. S. App. D. C. 125, 504 F. 2d 194 (1974).

On remand, further hearings were held, and the District Judge again concluded that "the monitoring agents made no attempt to comply with the minimization order of the Court but listened to and recorded all calls over the [subject's] telephone. They showed no regard for the right of privacy and did nothing to avoid unnecessary intrusion." Crim. No. 1088–70, Nov. 12, 1974; App. 14a. The judge again acknowledged the "knowing and purposeful failure to comply with or even attempt to comply with the minimization requirements," id., at 17a, and held that this "admitted" "conduct would be unreasonable even if every intercepted call were narcotic-related." Id., at 18a.

On appeal, the Court of Appeals again reversed, concluding that the surveillance was reasonable because, in light of the conversations actually intercepted, it could not identify any categories of calls which could not have been reasonably intercepted even if minimization procedures had been instituted. 170 U. S. App. D. C. 158, 516 F. 2d 751 (1975). The bad faith of the monitoring agents in not instituting any minimization procedures was thus deemed essentially irrelevant: the "agents could publicly declare their intent to disobey the minimization provisions of the wiretap order, and yet it is possible that the ultimate interceptions will be found to have been reasonable." Id., at 163, 516 F. 2d, at 756.

Rehearing en banc was denied, 173 U. S. App. D. C. 118, 522 F. 2d 1333, with four judges stating why they believed reconsideration by the full court was absolutely essential. Their statement is pertinent as an indication of the necessity for granting certiorari in this case. The dissenters observed, id., at 118–119, 522 F. 2d, at 1333–1334 (Robinson, J., joined by Bazelon, C. J., and

Wright and Leventhal, JJ.) (emphasis supplied, footnotes omitted):

"The decision in these cases appears to be seriously inconsistent with our earlier decision in *United States* v. *James,* [161 U. S. App. D. C. 88, 494 F. 2d 1007, cert. denied *sub nom. Tantillo* v. *United States,* 419 U. S. 1020 (1974)]. Beyond that, *the extent to which judicial interpretations of a statute sanctioning telephone wiretaps may tolerate otherwise unconstitutional invasions of privacy is a question of exceptional and recurring importance.* For these reasons—traditional foundations for full-court consideration—I would grant rehearing *en banc* in these cases.

"The governing statute requires all judicially authorized wiretapping to 'be conducted in such a way as to minimize the interception of communications not otherwise subject to interception . . . .' *James* adopted a construction of this provision which was formulated originally by the Second Circuit. Under the *James* standard, the duty to minimize is satisfied 'if "on the whole the [intercepting] agents have shown a high regard for the right of privacy and have done all they *reasonably* could to avoid unnecessary intrusions." ' Thus *James* demands an inquiry as to the intercepting agent's subjective intent to minimize the interception of innocent calls, as well as an objective determination that the agent could reasonably have believed that calls actually intercepted were likely to be illicit.

"The instant decision acknowledges this holding in *James,* but concludes that although the agents' attitude 'is a relevant factor to be considered, . . . the decisive factor is the second element—the objective reasonableness of the interceptions.' The first ele-

ment is relegated to a far less significant position: '[t]he subjective intent of the monitoring agents is not a sound basis for evaluating the legality of the seizure;' '[w]hen the monitoring agents fail to manifest "a high regard for the right of privacy," the Government will simply have a heavier burden of showing that the interceptions were reasonable.' Indeed, the court now says that 'the agents could publicly declare their intent to disobey the minimization provisions of the wiretap order, and yet it is possible that the ultimate interceptions will be found to have been reasonable.'

"Despite the admitted fact that '[t]hroughout these proceedings the Government has conceded that its agents did not minimize the interception of any conversations,' and the further fact, found by the District Court, that there was a 'knowing and purposeful failure by the monitoring agents to comply with [its] minimization order,' the decision herein rejects the District Court's ruling 'that the failure to attempt minimization was itself proof that the interceptions were unreasonable.' The opinion does concede that '[t]he presence or absence of a good faith attempt to minimize on the part of the agents is undoubtedly one factor to be considered in assessing whether the minimization requirements [sic] has been satisfied.' But the court stresses that in the final analysis 'the decision on . . . suppression . . . must ultimately be based on the reasonableness of the actual interceptions and not on whether the agents subjectively intended to minimize their interceptions.'

"This interpretation effectively destroys the subjective criterion of James' two-pronged standard for minimization efforts, and fatally undermines the

force of the minimization requirement itself. *Once the decisive test of the validity of an interception becomes its 'objective reasonableness,' there is grave danger that determinations of reasonableness will be dictated by hindsight evaluations of evidence uncovered by wiretaps.* This, in turn, is bound to generate a strong temptation to wiretap first and then use the fruits of the interception in an effort to demonstrate that the intrusion was justified. Courts have repeatedly refused to validate searches and seizures in this after-the-fact manner, and any decision which implies that Fourth Amendment safeguards apply less stringently to wiretaps than to other searches deserves close scrutiny by the entire court.

"Moreover, the practical ramifications of this decision are serious. It appears to destroy any incentive for law enforcement agents conducting wiretap surveillances to respect the rights of citizens to privacy in noncriminal telephone conversations in advance of their intrusion. *It is evident that when agents endeavor in good faith to honor these rights, innocent conversations are less likely to be intercepted. But when agents completely disregard their obligations to minimize no conversation is likely to escape their ears. That in my view is a result which hardly comports with a statute explicitly requiring minimization.* The court as a whole should take a hard look at these cases, and should itself define the extent to which would-be wiretappers must maintain allegiance to the statute and the Fourth Amendment."

Moreover, in *Walker v. United States, ante,* p. 917, in which the Court also denies certiorari today, a unanimous panel of the Court of Appeals for the District of Colum-

bia Circuit declarèd that it would have found a violation of the minimization requirement had the Court of Appeals not denied rehearing en banc in *Scott:*

> "This panel is of the view that § 2518 (5) was violated. However, this court in a case indistinguishable on this point, *United States* v. *Scott* . . . held otherwise. Since a suggestion to rehear *Scott en banc* was pending at the time this case was *sub judice,* this panel moved the court .to rehear *Scott* and this case *en banc.* That motion was denied. . . . Under the circumstances, on this issue this panel is bound by the decision in *Scott.*" Memo., Crim. No. 1978–69, Oct. 3, 1975, p. 1; Pet. for Cert. 2a.

In light of the general importance of the minimization provision in the conduct of electronic surveillance and the conflict between the holding in *Scott* and other formulations of the minimization requirement, and especially in light of the *Scott* opinion's denigration of the importance of the monitoring agents' good-faith attempt to comply with the statute and its retroactive validation of a Fourth Amendment search on the basis of what was uncovered by the search, there is simply no justification for failing to grant the writ of certiorari in this case. The minimization issue is not clouded by other factors, and given the District Judge's findings of total noncompliance with the statutory command, only an unyielding hostility to the statutory command of minimization and to the constitutional interest in privacy which it was fashioned to protect, can motivate the Court to continue to refuse to review decisions which condone round-the-clock interception of every conversation that transpires during the conduct of a particular surveillance. No concern with crowded dockets, at a time when we review a not insubstantial number of trivial cases, can excuse the failure to address this crucial issue of statutory construction,

fraught as it is with substantial constitutional overtones.

This refusal is not only inexcusable, but also especially anomalous in light of related actions by this Court in the electronic surveillance area. In *United States* v. *Kahn,* 415 U. S. 143 (1974), the Court, addressing the question of who must be named in an application and order authorizing surveillance, held:

> "Title III requires the naming of a person in the application or interception order only when the law enforcement authorities have probable cause to believe that the individual is 'committing the offense' for which the wiretap is sought." *Id.,* at 155.

In response to the argument of the Court of Appeals and the dissent, see *id.,* at 158–163 (Douglas, J., joined by BRENNAN and MARSHALL, JJ.), that such a conclusion would amount to approval of a general warrant proscribed by both Title III and the Fourth Amendment, the *Kahn* Court relied on the minimization mandate as an adequate safeguard to prevent such unlimited invasions of personal privacy, *id.,* at 154–155:

> "[I]n accord with the statute the order required the agents to execute the warrant in such a manner as to minimize the interception of any innocent conversations. . . . Thus, the failure of the order to specify that Mrs. Kahn's conversations might be the subject of interception hardly left the executing agents free to seize at will every communication that came over the wire—and there is no indication that such abuses took place in this case."

Yet the Court has consistently refused, and today persists in that refusal, to confront a case presenting the minimization question and the abuse that emanates from the seizure of "every communication that came over the

wire." Indeed, the refusal is even more troubling since certiorari has been granted in *United States* v. *Donovan*, 424 U. S. 907 (1976), a case in which the Solicitor General requests that we dilute even further the standard enunciated in *Kahn* for naming the subjects of proposed surveillance. I fail to comprehend how, in light of the above passage from *Kahn*, the Court can undertake that analysis without concomitantly addressing the contours of the minimization requirement. Inaction can only continue evisceration of the statutory mandate and require that Congress take a further and clearly unnecessary step of enacting more legislation, to give concrete content to § 2518 (5).

I would grant the petition for certiorari.