812 P.2d 1309

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Thomas MANES, Defendant–Appellant.**

No. 11706.

Court of Appeals of New Mexico.

March 14, 1991.

Certiorari Denied May 29, 1991.

Tom Udall, Atty. Gen., Patricia Gandert, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

W. Gilbert Bryan, Higginbotham, Oas & Bryan, Roswell, William A. L'Esperance, Albuquerque, for defendant-appellant.

## OPINION

ALARID, Chief Judge.

Defendant appeals his conviction for possession with intent to distribute metham-phetamine. He raises the following issues on appeal: (1) the trial court erred in denying defendant's motion to suppress evidence obtained in alleged violation of a wiretap order and New Mexico's wiretap statute: (2) the police lacked probable cause to search and arrest defendant; and (3) pre-indictment delay deprived defendant of his right to a speedy trial. Another issue listed in the docketing statement but not briefed is abandoned. *See State v. Fish,* 102 N.M. 775, 701 P.2d 374 (Ct.App. 1985). We affirm.

As a preliminary matter, the state urges us to dismiss defendant's appeal for failure to designate the necessary exhibits for this appeal. *See* SCRA 1986, 12–212(A); *State v. Duncan,* 95 N.M. 215, 619 P.2d 1259 (Ct.App.1980). We decline to dismiss defendant's appeal for a technical violation when the state ensured the proper exhibits were before this court. *See* R. 12–212(A); *see also State v. Garcia,* 92 N.M. 730, 594 P.2d 1186 (Ct.App.1978) (court has authority to request record on its own). Furthermore, appellate rules are to be construed liberally so that " 'causes on appeal may be determined on the merits where it can be done without impeding or confusing administration or perpetrating injustice.' " *Olguin v. State,* 90 N.M. 303, 305, 563 P.2d 97, 99 (1977) (citing *Jaritas Live Stock Co. v. Spriggs,* 42 N.M. 14, 16, 74 P.2d 722, 722 (1937)). Dismissal is too extreme in this case. *See Linam v. State,* 90 N.M. 302, 563 P.2d 96 (1977).

## FACTS

Suspecting defendant of trafficking in controlled substances, the Hobbs Police Department applied to the district court for an order authorizing a wiretap of defendant's home telephone. Pursuant to NMSA 1978, Sections 30–12–1 through –11 (Repl.Pamp. 1984), the district court issued an order authorizing the wiretap. The order provided, in accordance with the statute, that "any and all telephonic communications establishing, tending to establish or con-

cerned with the crimes of distribution of controlled substances and conspiracy, may be intercepted, monitored, and recorded by use of such wiretap." The order required that the wiretap "be conducted ... in such a way as to minimize the interception of communications not authorized to be intercepted, monitored, and recorded pursuant to this Order." The order also required the police to submit a weekly report to the district court judge detailing, among other things, "efforts at minimization or unauthorized interceptions (including, if practicable, the names or telephone numbers determined not to be involved in the crimes or conspiracy herein)."

Police officers monitoring the wiretap were required to read minimization laws and the court order. While conducting the wiretap, the police minimized the interception of unauthorized communications by first listening and recording the call for thirty seconds to one minute, or as long as it took to determine that the call was not incriminating in nature. They testified that this determination could not be made before the call began because it was not known who would answer the telephone. If the officer determined that the call was not incriminating, he would stop listening and recording, i.e., "minimize," for one to two minutes. If the conversation had not terminated, the officer would then listen to it for another thirty seconds to one minute to determine if the conversation had shifted. If it had not, he would minimize again. The officer would continue this process until the call was completed. The police used this minimization procedure with every incoming and outgoing call for the entire period that the wiretap was in place.

Testimony of police officers showed that it was unlikely that phone calls from defendant's wife, children, or mother (who lived at another residence) would be incriminating, but that the officers could not be certain that a call from a specific individual

would be innocent or not beneficial to the case.[1] Consequently, the police made no determination that any one person or phone number would be consistently innocent, and no effort was made to provide the district court with a list of innocent callers. However, the police provided the court with a weekly report delineating the wiretap operation. Each report included a copy of the monitoring logs, which detailed the calls and minimization. On May 2, 1987, the officers intercepted an incriminating conversation that led to defendant's arrest and conviction.

## DISCUSSION

### I. MINIMIZATION REQUIREMENT

Defendant moved to suppress all evidence seized pursuant to wiretap as being in violation of the wiretap statutes and depriving defendant of his fourth amendment right to be free from unreasonable search and seizures under the Constitutions of both the United States and New Mexico. The trial court found the wiretap was authorized and performed in accordance with the law.

Defendant argues that the police failed to properly minimize the interception of unauthorized communications, those involving defendant's wife, mother, and children. Since defendant does not challenge the validity of the court order authorizing the wiretapping of his home phone, we assume the order was valid.

 On appeal, the district court's decision not to suppress will be affirmed if supported by substantial evidence. *State v. Boeglin*, 100 N.M. 127, 666 P.2d 1274 (Ct.App.1983). The appropriate standard of review on appeal is whether the law was correctly applied to the facts, viewing those facts in the manner most favorable to the prevailing party. All reasonable inferences in support of the trial court's decision will be indulged, and all inferences or evidence to the contrary will be disregarded. *Id.;*

---

**1.** For instance, although defendant's mother did not make any incriminating statements while being monitored, she told defendant that she

had "picked up on the scam and the police were in the neighborhood."

see State v. Munoz, 111 N.M. 118, 802 P.2d 23 (Ct.App.1990). See also United States v. Garcia, 785 F.2d 214, 224 (8th Cir.), cert. denied, 475 U.S. 1143, 106 S.Ct. 1797, 90 L.Ed.2d 342 (1986); United States v. Van Horn, 789 F.2d 1492, 1502 (11th Cir.), cert. denied, 479 U.S. 854, 107 S.Ct. 190, 93 L.Ed.2d 123 (1986). Defendant has the burden of proving the wiretapping was unlawfully used. United States v. Garcia, 785 F.2d at 222.

The issue of whether minimization was proper is a matter of first impression in New Mexico. Because New Mexico's wiretap statute is substantially similar to Title III of the Federal Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2518(5) (1990), we examine federal minimization cases in reaching our decision. See Valles v. State, 90 N.M. 347, 563 P.2d 610 (Ct.App.1977) (interpretations of similar federal statute, while not binding, are persuasive).

■ In the context of wiretap orders, "minimization" is a shorthand expression representing the government's obligation to "[confine] intrusions as narrowly as possible so as not to trench impermissibly upon the personal lives and privacy of wiretap targets and those who, often innocently, come into contact with such suspects." United States v. Hoffman, 832 F.2d 1299, 1307 (1st Cir.1987); see also United States v. Dorfman, 542 F.Supp. 345, 390 (N.D.Ill.), aff'd, 690 F.2d 1217 (7th Cir.1982). Scott v. United States, 436 U.S. 128, 137, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978), the touchstone on minimization, held that an objective test of the reasonableness of the government's actions under the facts and circumstances will determine whether the police properly minimized. See also United States v. Hoffman; United States v. Dorfman.

■ Section 30–12–6 does not forbid interception of all nonrelevant conversations, but, like the federal statute, mandates the government to conduct the surveillance so as to minimize the interception of such conversations. See United States v. Dorfman, 542 F.Supp. at 390. Factors to be considered in determining whether the government acted reasonably in a given case may include, but are not limited to, the complexity of the criminal operation, whether the callers are using ambiguous or coded language, whether the applicable telephone is public or residential, the length of time of the wiretap and of the telephone calls, and the extent of judicial supervision. See, e.g., United States v. Garcia; United States v. Hoffman; United States v. Dorfman.

■ To prevail, defendants must show "a pattern of interception of innocent conversations which developed over the period of the wiretap"; it is insufficient if they merely identify particular calls which they contend should not have been intercepted. United States v. Dorfman, 542 F.Supp. at 391; see also United States v. Costello, 610 F.Supp. 1450, 1477 (N.D.Ill.1985) (absent pattern of non-minimization of intercepted, nonpertinent, innocent conversations during wiretap activity, government's failure to minimize interception of apparently innocent, nonpertinent conversations could not serve as a basis for suppressing intercepted criminal conversation), aff'd sub nom. United States v. Olson, 830 F.2d 195 (7th Cir.1987), cert. denied, 484 U.S. 1010, 108 S.Ct. 708, 98 L.Ed.2d 658 (1988).

■ Interception of all calls may be reasonable during the early stages of surveillance as the government usually has greater flexibility in monitoring, but may be unreasonable during the later stages of surveillance should the agents develop a category of innocent calls. Scott v. United States, 436 U.S. at 141–42, 98 S.Ct. at 1725; United States v. Chavez, 533 F.2d 491 (9th Cir.), cert. denied, 426 U.S. 911, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976); United States v. Dorfman, 542 F.Supp. at 390. If patterns of nonpertinent calls do not appear, it may be reasonable to intercept almost every short conversation because of inability to determine relevancy before the call is

completed. *Scott v. United States,* 436 U.S. at 141, 98 S.Ct. at 1725. "[A]gents can hardly be expected to know that the calls are not pertinent prior to their termination." *Id.,* 436 U.S. at 140, 98 S.Ct. at 1724; *see also United States v. Quintana,* 508 F.2d 867, 875 (7th Cir.1975) (while determining reasonableness of minimization, court noted "that no electronic surveillance can be so conducted that innocent conversations can be totally eliminated").

■ The only feasible approach to minimization is the gradual development, during the execution of a particular wiretap order, of categories of calls which will most likely not produce information relevant to the investigation. Once the monitoring agents have sufficient data to conclude that a particular type of conversation is unrelated to the criminal investigation, the minimization requirement obliges them to avoid future conversations *as soon as they can determine it falls within that category. Scott,* 436 U.S. at 141, 98 S.Ct. at 1725; *United States v. Hyde,* 574 F.2d 856, 870 (5th Cir.1978) (quoting *United States v. Scott,* 516 F.2d 751, 754 (D.C.Cir.1975), *cert. denied,* 425 U.S. 917, 96 S.Ct. 1519, 47 L.Ed.2d 768 (1976)); *see also Chavez,* 533 F.2d at 495 (emphasis added).

In *Chavez,* for instance, where the purpose of the wiretap was to investigate a large scale drug conspiracy and where conversants frequently spoke in foreign languages, the government intercepted nearly every call going in and out of Chavez' telephone for nine and one-half days. The court noted that if a pattern of innocent conversations develops over time such that guidelines can be formulated and followed to terminate listening to such calls, this should be done. *Chavez,* 533 F.2d at 494. Recognizing that such a pattern did not develop in *Chavez,* that the conspirators used jargon and code words, that the range of drug-related activity was so great it was not possible to place apparently legitimate business and personal calls above suspicion, and that the wiretap was for a short length of time, the court held the government did not violate the statutory minimization requirement. *Id.*

■ Other courts have allowed the government anywhere from one to three minutes before minimizing particular types of conversations. In *Costello,* which involved a complex conspiracy, the court held that a 180–second time frame was reasonable. *See also United States v. Losing,* 560 F.2d 906 (8th Cir.), *cert. denied,* 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977) (where alleged conspiracy involved numerous persons whose identity was difficult to ascertain, interception of first two to three minutes of a call was not violative of minimization requirements). *Costello* recognized that "[t]he concept of minimization concerns the government's conduct 'during the duration of the authorized interception.'" *Costello,* 610 F.Supp. at 1477 (quoting *United States v. Scott,* 504 F.2d 194, 197 (D.C.Cir.1974), *aff'd,* 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)). Not only is spot-checking of innocent conversations permissible to determine if the conversation has shifted, *United States v. Losing,* 539 F.2d 1174, 1180 (8th Cir.1976), *cert. denied,* 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977), but isolated failures to minimize innocent, nonpertinent conversations are inevitable and irrelevant to the government's overall conduct. *Costello,* 610 F.Supp. at 1477.

■ In the instant case, defendant identified particular persons whose calls he contends should not have been intercepted. While we acknowledge that a "pattern of innocent conversations" is somewhat amorphous, the trial court could have determined that defendant, by merely claiming these particular conversations should not be intercepted, failed to establish a pattern of innocent calls or interception thereof. A review of the wiretap logs verifies that the conversations defendant alleges should not have been intercepted were, in fact, properly intercepted, minimized as soon as the officers determined they were innocent, and appropriately spot-checked if they did

not immediately terminate. *See, e.g., Scott v. United States; United States v. Losing,* 539 F.2d 1174; *United States v. Costello.*

Consideration of other relevant factors shows that the minimization was reasonable under the totality of the circumstances. *See Scott v. United States.* Regarding the scope and breadth of the wiretap, it was in actual use for a relatively short period of time. *See United States v. Chavez.* The wiretap was in place on defendant's home telephone for approximately twenty-five days, from April 7 through May 2, 1987. Defendant, however, was out of town from the time the wiretap became operational until April 18. Other problems during the latter part of April caused a three-day lapse of monitoring. Therefore, actual monitoring of conversations comprised approximately twelve days.

Informants had provided police with information indicating that defendant was part of a sizable drug conspiracy and may have been receiving stolen property. A search warrant placed on defendant's telephone in March 1987 corroborated this information. Pursuant to the warrant, the police recorded 472 telephone calls during a sixteen-day period. Of the 98 numbers recorded, 21 numbers belonged to telephones accessible to persons either known or believed to be involved in criminal activity. A widespread conspiracy " 'may justify considerably more interception than would a single criminal episode.' " *Hoffman,* 832 F.2d at 1308 (quoting *United States v. Quintana,* 508 F.2d at 874); *see Scott v. United States,* 436 U.S. at 140, 98 S.Ct. at 1724.

Furthermore, the conspirators used coded language, "another factor which militates strongly in favor of added leeway.... When the opposition speaks in tongues, there is greater need to listen longer and more closely to conversations which may seem innocuous at first." *Hoffman,* 832 F.2d at 1308 (citations omitted). Where the conspiracy is complex and speaks "in veiled terms, the government is justified in intercepting conversations that eventually prove

to be without the scope of the ... authorization." *United States v. Williams,* 737 F.2d 594, 605 (7th Cir.1984), *cert. denied,* 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985). In the instant case, the officers timely minimized nonrelevant calls, remaining within the scope of the authorization.

Moreover, the officers provided the supervising judge with weekly progress reports on the wiretap activity, including detailed logs regarding minimization. Consequently, it can hardly be said that the officers' minimization was arbitrary or capricious. *See id.; United States v. Losing; United States v. Cantu,* 625 F.Supp. 656 (N.D.Florida 1985), *aff'd,* 791 F.2d 940 (11th Cir.1986); *United States v. Dorfman.* Indeed, the extent of judicial supervision was extensive enough to render the officers' oversight regarding developing and presenting a formal list of names or telephone numbers of innocent parties to the judge, as mentioned in the wiretap order, inconsequential.

We hold that substantial evidence supports a finding that the officers' conduct during the wiretap was reasonable and in accord with minimization requirements. A contrary conclusion would render fruitless the majority of electronic surveillance efforts.

## II. PROBABLE CAUSE

The following facts are pertinent to a discussion of defendant's probable cause issue. On May 2, 1987, the police, who were familiar with veiled drug terminology, monitored a call between defendant and Diane Patterson. The police had monitored numerous previous calls between defendant and Patterson wherein they discussed drugs and drug use. On May 2, Patterson called defendant and asked him if he could "be over pretty soon." She said that she would "like to have time to weigh some of that." Defendant responded that he could "bring some of that by" in thirty minutes. Defendant ended the conversation by saying "I'll bring some of this shit to you,

bye." After that conversation, the police obtained a warrant for defendant's arrest. They arrested him as he was arriving at Patterson's home. Upon searching defendant and his car, the police discovered methamphetamine.

Defendant argues that the police lacked probable cause to arrest and search him. "Probable cause exists when the facts and circumstances within the officers' knowledge, and of which they had reasonably trustworthy information, are sufficient to warrant a [person] of reasonable caution to believe that an offense has been, or is being, committed." *State v. Copeland*, 105 N.M. 27, 31, 727 P.2d 1342, 1346 (Ct.App.1986). In previous conversations monitored by the police, defendant and Patterson used the term "gram" with reference to drug activity. Moreover, in at least one other call between defendant and Patterson, the word "shit" was specifically used when referring to drugs. Under those circumstances, after monitoring the May 2 conversation, the police had probable cause to believe a crime was about to be committed.

## III. SPEEDY TRIAL ISSUE

Defendant argues his right to a speedy trial was violated by pre-indictment delay. Although pre-indictment delay may raise a separate due process challenge, on appeal, defendant focuses entirely on his right to a speedy trial under the sixth amendment to the United States Constitution. As previously stated, defendant was arrested on May 2, 1987. He was released on bond the same day. Several preliminary hearings were set and continued. On February 29, 1988, the state was unable to proceed with its case and defendant was discharged. Defendant was subsequently indicted by a grand jury on May 15, 1988. He was eventually convicted after trial on November 7, 1988.

The length of the delay was eighteen months. Under a speedy trial analysis, eighteen months is considered pre-

sumptively prejudicial and triggers a four-prong balancing test to determine if defendant's right to a speedy trial was violated. *See Zurla v. State*, 109 N.M. 640, 789 P.2d 588 (1990); *State v. Work*, 111 N.M. 145, 803 P.2d 234 (1990). The four factors we must balance are 1) length of delay; 2) reason for delay; 3) assertion of right; and 4) prejudice. *Zurla*, 109 N.M. at 642, 789 P.2d at 590. "[N]o one factor constitutes either a necessary or sufficient condition to finding a deprivation of the right to a speedy trial." *Id.*

### A. Length of Delay

The length of delay will ordinarily weigh more heavily against the state if the case is a simple crime as opposed to a complex criminal conspiracy. *See id.*, 109 N.M. at 642, 789 P.2d at 590 (quoting *Barker v. Wingo*, 407 U.S. 514, 531, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972)). Although this case involved relatively simple and routine drug charges, we believe the wiretap made the preparation and presentation of the case more difficult than usual. On balance, however, we weigh this factor in favor of defendant.

### B. Reason for Delay

The bulk of the delay resulted from several continuances of a preliminary hearing. The preliminary hearing was initially set for June 10, 1987. The hearing was continued to August 12, 1987, because the state did not provide defendant with the wiretap information at least ten days prior to the hearing. *See* NMSA 1978, § 30–12–8(A) (Repl.Pamp.1984). This delay should be weighed against the state. Over the next four months the preliminary hearing was reset three more times because state witnesses could not attend the trial. We consider delay due to missing witnesses a valid reason. *See Barker v. Wingo*, 407 U.S. at 531, 92 S.Ct. at 2192. That delay should not be weighed against the state.

The preliminary hearing was rescheduled a fifth time due to poor weather

conditions that made it impossible for the parties to travel to the courthouse. We consider that a valid reason for delay not to be weighed against either party. The last date set for the preliminary hearing was February 29, 1988. At that time, the state's witnesses were not present. Because the state was unable to proceed, defendant was discharged.

Approximately two and one-half months later, defendant was reindicted. We do not include this two and one-half month gap in our balancing. *See State v. Work; State v. Grissom,* 106 N.M. 555, 746 P.2d 661 (Ct.App.1987). Although some of the delay should be slightly weighed against the state, most of the delay was due to valid reasons. Accordingly, we weigh this factor slightly against the state.

### C. Assertion of Right

█ Defendant asserted his right to a speedy trial for the first time in his motion to dismiss filed on July 1, 1988. That motion came approximately four months prior to trial. We believe defendant's timely assertion of his right requires that this factor be weighed in his favor. *See State v. Work.*

### D. Prejudice

█ Defendant concedes he did not suffer any impairment of his defense due to the delay and that he did not suffer any great trauma, anxiety, or loss of liberty while released on bond. Defendant's sole assertion of prejudice is added attorney fees due to the numerous preliminary hearing continuances prior to his indictment. We can find no authority, nor has defendant pointed us to any, that suggests attorney fees are actual prejudice as contemplated under a speedy trial analysis. *See In re Adoption of Doe,* 100 N.M. 764, 676 P.2d 1329 (1984). Finding no actual prejudice, we weigh this factor against defendant.

█ In summary, we find the length of delay, reason for delay, and assertion of

right all weigh slightly in defendant's favor. We weigh the prejudice factor against defendant. Although three of the four factors weigh in defendant's favor, they are not overwhelming and are outweighed by the total lack of actual prejudice. Moreover, we give great weight to the trial court's determination that no speedy trial violation existed. *See State v. Work.* Accordingly, we conclude that defendant's right to a speedy trial was not violated.

## CONCLUSION

We affirm.

IT IS SO ORDERED.

BIVINS, J., concurs.

APODACA, J., dissents.

APODACA, Judge, dissenting.

I respectfully dissent because I disagree that the police complied with the trial court's wiretap order regarding the minimization of innocent calls or that partial suppression is an adequate remedy. Rather, I would hold that the police's failure to properly identify a category of innocent telephone calls, as mandated by the trial court's order, was unreasonable under the circumstances and that all of the calls should have been suppressed as a result.

The majority opinion has accurately outlined the minimization procedure used by the police in this appeal. It is not disputed that the police intercepted every call to or from defendant's home. My concern is not with the initial interception of every call, as that was necessary for the police to determine the identity of the callers, as well as the substance of the calls. *See United States v. Chavez,* 533 F.2d 491 (9th Cir.), *cert. denied,* 426 U.S. 911, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976). Instead, I am troubled by the police practice of continuing to monitor the calls involving defendant's wife, children, and calls between defendant and his mother after a determination was made

or should have been made that such calls were innocent. "If the agents learn from this initial total interception that there is a pattern of innocent conversations, then they should cease eavesdropping on that group during the remainder of the tap." *United States v. Quintana,* 508 F.2d 867, 874 (1975).

As a condition of authorizing the wiretap, the trial court required that the police provide it with a list of the innocent callers, if practicable. The police conducting the wiretap testified that they determined it unlikely that the calls in question were of an incriminatory nature. Despite this determination, however, not only did the police fail to provide the trial court with a list of the innocent calls, but they continued to monitor the calls after establishing that they involved innocent callers. I disagree with the majority that there was sufficient judicial supervision of the wiretap. The basis for my disagreement is that the trial court was not alerted to the fact that the police had identified a group of innocent callers. As far as anyone could tell from reviewing the reports given to the trial court by the officers, no one whose calls were continually monitored was above suspicion. Thus, the trial court had no reason to suspect that innocent calls were being monitored in contravention of the order.

The majority relies on *United States v. Dorfman,* 542 F.Supp. 345 (N.D.Ill.), *aff'd,* 690 F.2d 1217 (7th Cir.1982), to support its conclusion that partial suppression is adequate to remedy the unauthorized monitoring of innocent calls. I, on the other hand, do not consider the remedy offered in *Dorfman* sufficient to neutralize the damage caused by the government's failure to minimize. Rather, I would rely on the reasoning and analysis found in *United States v. Focarile,* 340 F.Supp. 1033 (D.Md.), *aff'd sub nom. United States v. Giordano,* 469 F.2d 522 (4th Cir.1972), *rev'd on other grounds,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974).

In this court's opinion the minimization requirement of [the statute] would be illusory if it were enforced on an item-by-item basis by means of suppressing unauthorized seizures at trial *after* the interception is a *fait accompli.* Minimization as required by the statute must be employed by the law enforcement officers *during* the wiretap, not by the court *after* the wiretap.... "[T]he limited system which the statute creates is designed to *prevent* unreasonable invasions of privacy, not to *repair* them...." (Emphasis added.) [*United States v. King,* 335 F.Supp. 523, 545 (S.D.Cal. 1971)]. While partial suppression ... may act as a sufficient prophylactic measure in the context of seizures of physical objects, the seizure of conversations differs so significantly as to warrant a stronger safeguard. Knowing that only "innocent" calls would be suppressed, the government could intercept every conversation which had definite incriminating value anyway, thereby completely ignoring the minimization mandate of [the statute]. A conversation once seized can never truly be given back as can a physical object. The right of privacy protected by the Fourth Amendment has been more invaded where a conversation which can never be returned has been seized than where a physical object which can be returned has been seized.

*Focarile,* 340 F.Supp. at 1046–47 (emphasis in original). I would adopt the *Focarile* rationale as law in New Mexico.

Nor can I agree with the majority that defendant did not establish a "pattern" of wrongful interception. That defendant, by necessity, had to point to "particular calls [that he] contend[ed] should not have been intercepted," does not mean that he did not establish a "pattern" of nonminimization. *United States v. Dorfman,* 542 F.Supp. at 391. The only case I found that approached defining a "pattern" for purposes of minimization was *Dorfman.* The court stated:

We do not simply focus on the individual conversation and determine whether it contains any incriminating statements;

rather, where a pattern of unlawful interception is established we examine the challenged interceptions to determine whether they fall within that pattern. If the government continues to intercept, for example, a person not named in the authorizing order after his or her identity has been established and a pattern of innocent conversation takes place, it would be of no moment that eventually that individual was heard discussing incriminating matters; the conversation would still be subject to suppression because it would have been "unlawful" for the monitors to be overhearing the conversation in the first instance.

*Id.* at 395. To conclude that there was a pattern "requires a showing of 'repeated, unreasonable interceptions' before improper minimization will be found." *United States v. Costello,* 610 F.Supp. 1450, 1477 (N.D.Ill.1985), *aff'd sub nom. United States v. Olson,* 830 F.2d 195 (7th Cir. 1987), *cert. denied,* 484 U.S. 1010, 108 S.Ct. 708, 98 L.Ed.2d 658 (1988) (quoting *United States v. Pine,* 473 F.Supp. 349, 353 (D.Md. 1978). The "pattern" of wrongfully monitored calls identified by defendant were all those calls to or from his children, wife and mother, once they were determined to be nonincriminating. That one of the mother's calls referred to the fact that the police were in the neighborhood should be of no consequence as an after-the-fact justification in continuously monitoring her earlier calls once the police themselves determined her calls were not related to the narcotics conspiracy. After having initially identified the caller as one they felt was innocent, the police were no longer authorized to continue the monitoring of the calls, irrespective of the calls' duration. *See United States v. Quintana; United States v. Chavez; but see United States v. Scott,* 516 F.2d 751, 755 (D.C.Cir.1975) (even after a category of innocent calls is established, it will still likely be necessary to intercept some portion of each call to determine whether it falls into the category being minimized), *cert. denied,* 425 U.S. 917, 96 S.Ct. 1519, 47 L.Ed.2d 768 (1976).

I agree that an objective, fact-specific test of the reasonableness of the officers' actions is appropriate. I do not, however, agree that, under the circumstances of this appeal, the officers' conduct in continuing to monitor the innocent category of calls was reasonable. Again, my disagreement with the majority goes not to the fact that each call was initially intercepted, but that the continued monitoring of the innocent calls was unreasonable. This case did not involve a complex conspiracy, expanding over several states and involving hundreds of people, as in those cases noted by the majority.

The tenor of the wife's, children's and mother's conversations did not involve "coded" language about drugs, nor did the police argue that there was a reasonable inference that these people were in any way involved in defendant's illegal pursuits. I think these factors weigh heavily in favor of a finding of unreasonableness under the circumstances present here. As observed in *United States v. Hyde,* 574 F.2d 856, 869 (5th Cir.1978), "[i]t was appropriate for agents investigating this widespread conspiracy to monitor calls more extensively than might have been appropriate in a *simpler* case." (emphasis added). The facts of this appeal represent such a "simpler" case and the government's actions in monitoring every call should be held to closer scrutiny.

Based on my conclusion that the only adequate remedy for the failure of the police to properly minimize the innocent calls was total suppression of all calls and all evidence resulting from information gleaned from those calls, I would reverse defendant's conviction for lack of probable cause. If all of the information obtained from the calls was illegally obtained, then it should follow that the information obtained as a basis for the arrest warrant and the eventual seizure of the drugs were obtained as a result of the initial illegality. Because the arrest warrant was based on evidence illegally obtained, the eventual seizure was a fruit of the poisonous tree

and that evidence must also be suppressed. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *State v. Everitt,* 80 N.M. 41, 45, 450 P.2d 927, 931 (Ct.App.1969).